## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTHERN POVERTY LAW CENTER<br>400 Washington Ave.<br>Montgomery, AL 36104<br><br>and<br><br>NATIONAL IMMIGRATION LAW CENTER<br>3450 Wilshire Blvd. #108-62<br>Los Angeles, CA 90010<br><br>                  Plaintiffs,<br><br>     v.<br><br>INTERNAL REVENUE SERVICE<br>1111 Constitution Ave., N.W.<br>Washington, D.C. 20224<br><br>               Defendant. | Civil Action No. |

## COMPLAINT

1.      Plaintiffs Southern Poverty Law Center ("SPLC") and National Immigration Law Center ("NILC") (collectively, "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for mandatory and other appropriate relief to compel the processing of their May 7, 2019 FOIA request (the "Request") and the prompt disclosure and release of records from Defendant, the Internal Revenue Service (the "IRS" or "Defendant"). *See* **Exhibit A**.

2.      Under the guise of an IRS search warrant for financial records, on April 5, 2018, the IRS, in conjunction with several federal and state law enforcement agencies, conducted what was then the single largest worksite immigration raid in the last decade, at Southeastern Provision, LLC ("the Plant"), located at 1617 Helton Road, Bean Station, Tennessee (the "Raid").  Dozens of agents descended on the Plant and detained and arrested more than one

hundred Latino workers without probable cause.  White workers were subject to no such treatment.  Public interest surrounding this worksite raid was intense and widespread.  And with the more recent and larger immigration raids in Mississippi, public interest in conduct by government agents during these worksite raids is even stronger.  Moreover, the actions of the federal and state officers that day resulted in a federal damages class action being filed on behalf of all of the workers subjected to violations of their constitutional rights during the Raid against dozens of named federal officers and the United States of America.

3.      On May 7, 2019, Plaintiffs submitted the Request to the IRS, seeking specific information related to the Raid, including photographs of the worksite, the enforcement action review form, and the names of the IRS agents involved in the planning and execution of the warrant and the Raid.  The Request specifically stated: "Please note that Requesters do not seek tax returns or tax return information, as defined under 26 U.S.C. § 6103, of any third party, including those of Mr. James Brantley," and specifically excluded from the Request communications "concerning tax returns or tax return information."  Further, the Request asked the IRS to redact any tax return information should otherwise responsive records contain such information.

4.      In response, the IRS claims that the information sought in the Request is "tax return information" and protected by Section 6103.  Moreover, the IRS claims that it cannot even acknowledge whether responsive records exist because doing so would "identify whether an investigation was conducted."

5.      But the public already knows that an investigation was conducted.  The Department of Justice broadcast that fact in a September 12, 2018 press release announcing that

Mr. Brantley had "pleaded guilty … to tax fraud," among other crimes.  Mr. Brantley has since been publicly sentenced for his crimes.  Any "investigation" is both public and complete.

6.      Hiding behind Section 6103, the IRS refuses to even process Plaintiffs' Request and has failed to produce a single record.  Faced with the IRS's refusal to acknowledge the existence of records or to adequately consider the Request, Plaintiffs are forced to file this action.

7.      The IRS must process the Request, as submitted, and produce the records requested or explain why the records cannot be produced.

## THE PARTIES

8.      Plaintiff NILC is a nonprofit legal advocacy organization that engages in policy analysis, advocacy, education, and litigation to promote and advance the rights of low-income immigrants and their families.  NILC serves as an important resource to a broad range of immigrant advocacy groups, community organizations, legal service organizations, and the public.  As a part of its work, NILC actively engages with and disseminates information to the public through trainings and other educational and informational materials.  It also represents individuals who have experienced violations of their constitutional rights.  NILC submitted the Request that is the subject of this action and is a "person" within the meaning of 5 U.S.C. § 551(2).

9.      Plaintiff SPLC is a non-profit organization dedicated to fighting hate and bigotry and to seeking justice for the most vulnerable members of society.  Through the use of public education, litigation, and other forms of advocacy, SPLC works toward a vision of equal justice and equal opportunity.  SPLC has a long-standing commitment to defending the rights of immigrants, and it provides free legal representation to immigrants who have suffered violations

of their civil rights.  SPLC submitted the Request that is the subject of this action and is a "person" within the meaning of 5 U.S.C. § 551(2).

10.    Defendant the IRS is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). The IRS is the bureau of the Department of the Treasury responsible for the collection of taxes and the enforcement of tax laws, and it is an agency of the United States.  On information and belief, the IRS has possession of and control over the records and information requested by Plaintiffs under FOIA.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346.  This Court also has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).

12.    This Court also has personal jurisdiction over Defendant because Defendant is conducting business and maintaining operations in this District.

13.    Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B), which provides for the hearing of FOIA cases in, among other proper venues, the district in which responsive records may be found and in this District.

14.    Mandatory injunctive relief is proper under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

## STATUTORY FRAMEWORK

15.    Any member of the public may request records from an agency of the United States under FOIA.  Under 5 U.S.C. § 552(a)(6)(A)(i), an agency that receives a FOIA request must respond in writing within 20 business days after receipt of the request, excluding legal public holidays.  In its response, an agency must: inform the requestor as to whether it intends to

4

comply with the request; provide reasons for its determination; and inform the requestor of its right to appeal the determination. 5 U.S.C. § 552(a)(6)(A)(i). FOIA provides for an extension of this deadline "[i]n unusual circumstances" but limits this extension to "ten working days." 5 U.S.C. § 552(a)(6)(B)(i).

16.     FOIA requires an agency to disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions.   5 U.S.C. § 552 (a)(3)(A); 5 U.S.C. §§ 552(b)(1)-(9).

17.     FOIA also requires an agency to make a reasonable search for responsive records. 5 U.S.C. § 552(a)(3)(C).

18.     Under 5 U.S.C. § 552(a)(6)(E), expedited processing should be provided for a person who demonstrates a "compelling need" for the records.

19.     Under 5 U.S.C. § 552(a)(4)(A), a "representative of the news media" who requests records from an agency for a non-commercial reason that is in the public interest may have search and duplication fees waived.

20.     Under 5 U.S.C. § 552(a)(4)(B), upon a requestor's complaint, a district court has jurisdiction to enjoin an agency from withholding records and to order production of records subject to disclosure.

**FACTUAL BACKGROUND**

21.     On April 5, 2018, in a calculated, militaristic fashion, armed officers from several agencies, including the U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), and the IRS (collectively, the "Officers"), descended on the Plant.  The Officers were assisting with the execution of an IRS search warrant for financial records related to the crimes of the Plant's owner, James Brantley.  In an intricately planned operation, the

Officers ignored the scope of the IRS warrant and executed the Raid, which was then the largest workplace immigration raid in nearly a decade, unlawfully seizing and arresting approximately one hundred Latino workers.

22.     The Officers physically and verbally abused the Latino workers.  One Officer punched a worker in the face.  Another Officer approached a fallen worker, put his boot on the worker's head and pointed a gun at him.  When one of the workers asked an officer if a pregnant co-worker could sit down, the officer refused and told the worker to "Shut [his] f—king mouth." When that same worker asked to use the bathroom, another federal Officer forced him outside next to a trailer and, in full view of other Officers, held a gun to his head and forced him to publicly expose himself in order to relieve himself.  All of the Latino workers — regardless of whether they had proof of work authorization — were handcuffed and transported in large vans several miles away and across county lines to a waiting National Guard Armory, where they were detained for several additional hours.  Some workers were detained for twelve hours or more in total.

23.     The Plant's White workers were not subjected to the same treatment.  During the Raid, they were not handcuffed and they were allowed to walk around freely.  They were even allowed outside for smoke breaks.

24.     Only eleven of the approximately one hundred workers who were unlawfully detained were ultimately charged with *any* crime.  Of those, none were charged with a violent crime.

25.     Public interest in the Raid is widespread.  Numerous news accounts reflect the strong and sustained public interest in the records Plaintiffs seek.[1]  Interest in these worksite

---

[1] *See, e.g.*, "ICE Raids Meatpacking Plant in Rural Tennessee; 97 Immigrants Arrested," Washington Post (Apr. 6, 2018), https://www.washingtonpost.com/local/immigration/ice-raids-

enforcement operations has only grown following the larger raids in Mississippi that occurred just a few weeks ago.[2]

26.    On September 12, 2018, the Department of Justice (the "DOJ") publicly announced that James Brantley "pleaded guilty . . . to tax fraud," among other crimes.  **Exhibit B.**  The DOJ informed the public that "[a] detailed account of Brantley's scheme is contained in his plea agreement on file with the U.S. District Court and available to the public."  The press release then described how the IRS and other agencies conducted "a lengthy investigation" and

---

meatpacking-plant-in-rural-tennessee-more-than-95-immigrants-arrested/2018/04/06/4955a79a-39a6-11e8-8fd2-49fe3c675a89_story.html?noredirect=on&utm_term=.2db34635d80c;  "Families Wait for Answers After ICE Raid in Grainger County," WBIR (Apr. 6, 2018), https://www.wbir.com/article/news/local/families-wait-for-answers-after-ice-raid-in-grainger-county/51-536062125; "Affidavit Details Alleged Worker Exploitation, Tax Fraud at Grainger Plant," WBIR (Apr. 6, 2018), https://www.wbir.com/article/news/crime/affidavit-details-alleged-worker-exploitation-tax-fraud-at-grainger-co-plant/51-535625793;  "Large Cash Withdrawals Led Federal Authorities to Grainger County Slaughterhouse," ABC 6/WATE (Apr. 6, 2018), https://www.wate.com/news/local-news/97-detained-at-grainger-co-slaughterhouse-following-ice-raid/1104512258;  "IRS, ICE Officials Raid Grainger County Meat Packing Plant," Citizen Tribune (Apr. 6, 2018), https://www.citizentribune.com/news/local/irs-i-c-e-officials-raid-grainger-county-meat-packing/article_214bbe7e-39ba-11e8-b62c-bb1f2d394701.html;  "ICE raids Grainger County meatpacking plant amid charges owners avoided $2.5M in payroll taxes," Knox News (Apr. 5, 2018), https://www.knoxnews.com/story/news/crime/2018/04/05/ice-raids-meatpacking-plant-grainger-county/490673002/;  "97 Arrested in Immigration raid at TN Beef Plant," Ag Web (Apr. 6, 2018), https://www.agweb.com/article/97-arrested-in-immigration-raid-at-tn-beef-plant/;  "At least 50 detained in Tennessee Immigration Raid," Mountain news/WYMT (Apr. 6, 2018), https://www.wymt.com/content/news/478993163.html;  "Bean Station ICE raid: One year later, workers still wait to learn fates," Knoxville News Sentinel, https://www.knoxnews.com/story/news/2019/04/05/bean-station-ice-raid-immigrant-workers-await-fates/3357550002/.

[2] *See, e.g.*, "ICE Arrests Hundreds in Mississippi Raids Targeting Immigrant Workers," N.Y. Times, https://www.nytimes.com/2019/08/07/us/ice-raids-mississippi.html;  "Mississippi Immigration Raids Lead to Arrests of Hundreds of Workers," NPR, https://www.npr.org/2019/08/07/749243985/mississippi-immigration-raids-net-hundreds-of-workers; "680 undocumented workers arrested in record-setting immigration sweep on the first day of school," CNN (Aug. 9, 2019), https://www.cnn.com/2019/08/08/us/mississippi-immigration-raids-children/index.html; "After Mississippi ICE raids, some affected children still are without a parent, official says," CNN, https://www.cnn.com/2019/08/16/us/mississippi-ice-raids-children-separated/index.html.

explained how Mr. Brantley exploited vulnerable workers "to reduce Brantley and Southeastern Provision's FICA tax obligations . . . [and] unemployment tax obligations."  According to the DOJ, the "case was a criminal investigation from day one, not simply an immigration enforcement action," and concluded with multiple high-ranking federal officers providing quotes on the harm to the public of tax fraud.

27.     On February 21, 2019, seven individuals arrested in the Raid (the "Raid Litigation Plaintiffs"), individually and on behalf of themselves and a class of similarly situated workers, filed a Complaint against several named Officers and Doe Defendants 1-30 to defend and vindicate their rights under the Fourth and Fifth Amendments to the U.S. Constitution.  The Raid Litigation Plaintiffs' claims are being brought against the individual defendants pursuant to the *Bivens* doctrine, which provides a remedy where a federal officer violates the Constitution while acting under color of federal authority.  This litigation is currently pending in Case No. 3:19-cv-00062 in the United States District Court for the Eastern District of Tennessee, Knoxville Division (the "Raid Litigation").  Plaintiffs, along with other pro bono attorneys, represent the Raid Litigation Plaintiffs.  The Raid Litigation now names dozens of federal officers and includes Federal Tort Claims Act claims against the United States of America.  A copy of the third amended complaint filed in the Raid Litigation is attached as **Exhibit C** to this Complaint.

28.     Mr. Brantley was sentenced on July 31, 2019.  As the local news put it: "The man whose tax-dodging kicked off the largest immigration raid in recent Tennessee history will serve a year-and-a-half in federal prison."[3]  There can be no dispute that any IRS investigation of Mr. Brantley and Southeastern Provision is both public and concluded.

---

[3] https://www.knoxnews.com/story/news/crime/2019/07/31/bean-station-ice-raid-slaughterhouse-owner-18-months-prison-james-brantley-wall-illegal-immigration/1867197001/.

## THE FOIA REQUEST

29.     On May 7, 2019, Plaintiffs submitted the Request to the IRS via U.S. Certified Mail.  Plaintiffs submitted the Request to the IRS by fax on May 8, 2019.  The Request was assigned two distinct FOIA case numbers: F19128-0052 and F19133-0068.  The Request was narrow, targeted, and detailed.  The Request seeks the records related to the execution of a search warrant and worksite enforcement operation conducted on April 5, 2018, by the IRS and other federal and state law enforcement agencies involved in the Raid.  *See* **Exhibit A**.

30.     Specifically, Plaintiffs seek:

    a.    All records related to the planning and carrying out of the worksite operation conducted at Southeastern Provision LLC in Bean Station, Tennessee on April 5, 2018, including but not limited to:
        i. Enforcement Action Review Form (EARF);
        ii. Risk Assessment Guide;
        iii. Search Warrant Checklist;
        iv. Search Warrant Plan;

    b.    All communications between the IRS and any Tennessee state or local governmental agency or Tennessee state or local law enforcement agencies, including but not limited to the Tennessee Highway Patrol and the Morristown Police Department, related to the worksite enforcement operation conducted at Southeastern Provision LLC;

    c.    All communications between the IRS and the Department of Homeland Security or its component agencies (including Immigration and Customs Enforcement, Homeland Security Investigations, and Customs and Border Protection) related to the worksite enforcement operation conducted at Southeastern Provision LLC;

    d.    All communications, not concerning tax returns or tax return information, between the IRS and individuals associated with Southeastern Provision LLC, including managers, supervisors, employees and/or agents;

    e.    Copies of all photographs taken during the worksite enforcement operation conducted at Southeastern Provision LLC;

    f.    Copies of all administrative and/or criminal warrants issued and served on an agent of Southeastern Provision LLC related to the worksite enforcement operation, including but not limited to, In re the Search of: 1617 Helton Road, Bean Station, TN 37708 (E.D. Tenn. Apr. 2, 2018);

g.     The identities of all IRS personnel involved in the planning of and/or physically present during the worksite enforcement operation at Southeastern Provision LLC, including, but not limited to:
     i. Full name;
     ii. Rank or official title; and
     iii. Office location;

h.     All FOIA Search Staffing Sheets related to the instant FOIA request.

31.     Plaintiffs also made clear that they were not seeking information protected under Section 6103:

> Please note that Requesters do not seek tax returns or tax return information, as defined under 26 U.S.C. § 6103, of any third party, including those of Mr. James Brantley, owner of the Southeastern Provision plant.  Although Requesters do not anticipate the requested records to contain any information exempted under Section 6103, should the records contain tax return information, such information may be redacted.  However, we expect those portions of the records not subject to redaction to be produced.

32.     Plaintiffs requested a waiver of all fees for the Request pursuant to 5 U.S.C. § 552(a)(4)(A) because disclosure of the requested information was in the public interest and not in Plaintiffs' commercial interest.

33.     Plaintiffs also requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(d)(1) because, among other reasons, any delay in receiving the records requested would result in "'the loss of substantial due process rights.'"   28 C.F.R. §16.5(d)(1)(iii).[4]  Reports about the Raid raised serious questions about the manner in which the worksite enforcement operation was conducted and showed possible constitutional violations,

---

[4]  On December 17, 2018, in a request similar to the instant Request, Plaintiff NILC sought the identities of all ICE, HSI, or other DHS personnel physically present during the Raid (ICE FOIA Request No. 2019-ICFO-32230).  *See* **Exhibit D**.  Plaintiff NILC sought and was granted expedited processing of that request.  *See* **Exhibit E**.  Given the similarity between the prior request and the instant Request, expedited processing is also due here. ICE similarly granted Plaintiff NILC's request for a fee waiver.

which require an immediate response.  As described above, Plaintiffs ultimately filed class action litigation on behalf of the workers subjected to the Raid.

## THE IRS'S USE OF SECTION 6103 IS AN
## INAPPOSITE RESPONSE TO PLAINTIFFS' REQUEST

34.     On May 22, 2019, Plaintiffs received a letter response, dated May 17, 2019, from the IRS (the "Initial Response").  *See* **Exhibit F**.  The Initial Response stated that the Request was received on May 8, 2019, and it was designated Case Number F19128-0052.  The Initial Response provided that it was a "final response" to the Request and that the Request had been deemed "incomplete with no further action [necessary]" because "[t]he scope of [the] request extends to documents, ***to the extent that any exist***, that consist of, or contain the [tax] return information of a third party" (emphasis added).  The Initial Response further stated that "when a person is requesting records pertaining to other persons or business, 'the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate.'"  The Initial Response stated that the IRS was "closing your request as incomplete with no further action."  The Initial Response did not inform Plaintiffs of their right to appeal the decision.

35.     Four days later, Plaintiffs received a second letter, dated May 21, 2019, that also claimed to be the IRS's "final response" to the Request (the "Second Response").  *See* **Exhibit G**.  The Second Response, in contrast to the Initial Response, indicated that the Request was received on May 13, 2019, and designated it Case Number F19133-0068.  The Second Response again claimed that Plaintiffs sought tax return information.  Instead of claiming to close the Request, however, the Second Response asked Plaintiffs to provide additional documentation.  The Second Response further provided that "[t]he 20 days [the IRS] are allowed to comply with your request will begin when [the IRS] receive[s] the requested information."

36.     Confused by the two "final response[s]," Plaintiffs replied to both the Initial Response and the Second Response on June 5, 2019.  *See* **Exhibit H**. Citing inconsistencies in the Initial Response and the Second Response and reiterating the plain language of the Request (i) stating that it was not seeking tax return information, and (ii) requesting that the IRS redact any tax return information, Plaintiffs asked the IRS for clarification of its inconsistent responses.

37.     On July 2, 2019, the IRS responded to Plaintiffs' June 5 letter with yet another "final response" (the "Third Response").  *See* **Exhibit I**.  The Third Response wrongly began by claiming that Plaintiffs had "narrowed the scope" of the Request in their June 5 letter.  Then, for the first time, the IRS conceded that Plaintiffs did "not seek[] tax returns or tax return information."  Nevertheless, the IRS still refused to even identify whether responsive records existed, let alone provide any records, in response to the Request because the information sought "would be contained in an investigative file, that would be retrievable by and [sic] Employer Identification Number and identify that an investigation was conducted."  Thus, the IRS claimed that "the scope of your request extends to documents, to the extent that any exist, that consist of, or contain the return information of a third party." The IRS added "that such records, to the extent that they exist, would be confidential and may not be disclosed" under Section 6103. Through its Third Response, the IRS continued to refuse to confirm even the existence of responsive records and continued to ignore Plaintiffs' instructions to redact tax return information.  The IRS "clos[ed the] request as incomplete with no further action."  The Third Response did not inform Plaintiffs of any right to appeal.

38.     On July 26, 2019, Plaintiffs appealed the prior responses of the IRS.  *See* **Exhibit J**.  In a letter dated August 5, 2019, but not received by Plaintiffs until August 12, 2019, an IRS Appeals Team Manager stated that because the prior responses closed the Request as incomplete

for lack of authorizing paperwork under Section 6103, the IRS did not deny access to the records, and thus there was "no jurisdiction for an administrative appeal under these circumstances." *See* **Exhibit K**. The IRS Appeals Team advised that it was "closing [its] file in regard to this matter." Nevertheless, the IRS Appeals Team advised that it agreed with the prior responses and stated that "[t]o the extent that such information exists," Section 6103 prohibits providing the information contained in the Request because "the documentation [Plaintiffs] request are [sic] within the tax administrative and/or investigative file of a third-party and collection by the Service for a specific investigation." The IRS Appeals Team did not acknowledge Plaintiffs' request to redact tax return information from any responsive records.

39.     It has been more than three months since Plaintiffs submitted the Request, and the IRS continues to ignore the narrow scope of the Request and Plaintiffs' request to redact information to address any concerns with Section 6103. Indeed, the IRS refuses to even confirm the existence of records from an investigation the DOJ trumpeted to the public. Out of options, Plaintiffs filed this lawsuit to compel the IRS to process the Request, produce the records to which Plaintiffs are entitled, and provide a *Vaughn* index for any withheld or redacted records.

## CAUSES OF ACTION

40.     Plaintiffs re-allege and incorporate by reference all of the foregoing paragraphs in this Complaint as though fully set forth herein.

41.     Defendant has violated FOIA, 5 U.S.C. § 552(a)(3)(A), by failing to promptly release agency records in response to the Request. More than thirty days have passed and the IRS has repeatedly refused to make any substantive determination on the Request — each time closing the Request as "incomplete" because Plaintiffs did not provide documents that are irrelevant because Plaintiffs do not seek to view tax return information protected under Section 6103. Plaintiffs' administrative appeal was dismissed for the same reason.

42.    Plaintiffs have repeatedly and expressly stated that they do not seek any information protected under Section 6103 and have repeatedly and expressly requested that the IRS redact any such information.  Accordingly, no additional documentation was required of Plaintiffs and the IRS improperly closed the Request as incomplete.

43.    Plaintiffs have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C).

44.    Mandatory relief is authorized under 5 U.S.C. § 552(a)(4)(B) because Defendant continues to improperly withhold a determination on the Request and responsive agency records in violation of FOIA.  Plaintiffs will suffer irreparable injury from, and have no adequate remedy at law for, Defendant's illegal withholding of government records subject to the Request.

## PRAYER FOR RELIEF

For these reasons, Plaintiffs ask that this Court grant the following relief:

a.    declare that the Request was not incomplete and that 26 U.S.C. § 6103 does not prevent the IRS from issuing a determination on the Request;

b.    order Defendant to disclose within three (3) business days of this Court's decision whether records responsive to the Request exist;

c.    enjoin Defendant from refusing to process the Request and order it to process the Request within seven (7) business days of this Court's decision;

d.    enjoin Defendant from withholding responsive records to the Request and order it to produce, in a form that allows Plaintiffs to reasonably and quickly ascertain the requested information, all records responsive to the Request within ten (10) business days of this Court's decision;

e.      for any records responsive to the Request that are withheld or redacted, order Defendant to produce a *Vaughn* index within five (5) business days after the completion of the production of documents;

f.      award Plaintiffs their costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

g.      grant such other relief as the Court may deem just and proper.

Dated:  August 19, 2019

Respectfully submitted,

*/s/ Donald P. Salzman*

Donald P. Salzman, DC Bar No. 479775
1440 New York Avenue, N.W.
Washington, D.C. 20005
T: 202-371-7983
F: 202-661-9063
E: Donald.Salzman@probonolaw.com

Eben P. Colby, MA Bar No. 651546, Motion
for Pro Hac Vice to be Filed
500 Boylston Street
Boston, Massachusetts 02116
T: 617-573-4855
F: 617-305-4855
E: Eben.Colby@probonolaw.com

Arthur R. Bookout, DE Bar No. 5409, Motion
for Pro Hac Vice to be Filed
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
T: 302-651-3026
F: 302-434-3026
E: Art.Bookout@probonolaw.com

Jason S. Levin, DE Bar No. 6434, Motion for
Pro Hac Vice to be Filed
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
T: 302-651-3086
F: 302-434-3085
E: Jason.Levin@probonolaw.com

*Counsel for Plaintiffs*